**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

KENDALL ANDERSON, *et. al*,

Plaintiffs,

v.

AMERICAN AIRLINES, INC.,

Defendants.

Case No. 25-cv-03609-BAS-MSB

**ORDER DENYING DEFENDANTS AMERICAN AIRLINES, INC. AND AMERICAN AIRLINES GROUP, INC.'S MOTION TO TRANSFER VENUE (ECF No. 70)**

Presently before the Court is Defendants American Airlines, Inc. and American Airlines Group, Inc.'s ("AA Defendants") Motion to Transfer Venue. (ECF No. 70.) For the reasons below, the Court **DENIES** AA Defendants' Motion to Transfer Venue. (*Id.*)

## I. BACKGROUND

American Airlines announced the American Airlines Cadet Academy ("AACA") in April 2018, describing it as a first-of-its-kind program to give aspiring pilots the training, financing, and mentoring needed to fly for the world's largest airline. (ECF No. 62 ¶¶ 1, 52, 99, FAC.)

Beginning in January 2019, American partnered with Coast Flight Training to run the AACA at Coast's campuses in San Diego, Dallas, and San Marcos. (*Id.* ¶¶ 41, 60.) American recruited, interviewed, and selected the cadets; Coast provided the training. (*Id.* ¶¶ 42, 61.) Both American Airlines, Inc. and American Airlines Group, Inc. are alleged to

have operated the program jointly, with the Group entity describing the AACA in sustainability reports as its own recruitment vehicle. (*Id.* ¶¶ 40, 62.) Defendants also designated "partner lenders"—Discover, Sallie Mae, and the American Airlines Federal Credit Union—emailed cadets links to loan applications, and, through Coast, certified the loans, received disbursements directly, held the funds in Coast's own prepaid accounts, and controlled the release of living-expense money to cadets. (*Id.* ¶¶ 66–78.)

All twenty Plaintiffs are all non-white and had little or no aviation background prior to the AACA program. (*Id.* ¶¶ 402, 428, 447, 475, 502, 521, 542, 577, 601, 633, 657, 688, 709, 730, 757, 782, 810, 838, 865, 897).

Plaintiffs allege that upon seeing American's advertising, they believed the AACA program would make them a commercial pilot in twelve months for a fixed, loan-covered price, and rearranged their lives accordingly—quitting jobs, declining college offers, relocating across the country, and borrowing $52,000 to $126,000. (*Id.* ¶¶ 4, 7, 380.) None of the twenty finished. (*Id.* ¶ 117.) Sixteen were terminated; and four resigned under pressure. (*Id.* ¶¶ 15, 326, 329.) Each relocated to a Coast campus, several across the country. (*Id.* ¶¶ 7, 17–36.)

Despite leaving the AACA program without obtaining their licenses, Plaintiffs currently carry loans from the program—averaging about $90,000, some at 14% interest, with missed payments, damaged credit, and at least one default. (*Id.* ¶¶ 379, 385–386.)

On December 16, 2025, Plaintiffs filed the present action against Defendants American Airlines Federal Credit Union ("AAFCU"), Coast Flight Training and Management, Inc. ("Coast"), and American Airlines Group, Inc., and American Airlines, Inc., ("AA Defendants") (collectively, "Defendants"). (ECF No. 1.) On April 7, 2026, Plaintiffs voluntarily dismissed all claims against AAFCU. (ECF No. 55.) Two weeks later, Plaintiffs filed the first amended complaint. (FAC.)

In the FAC, Plaintiffs bring the following causes of action:

1. **Count 1: Fraud / Intentional Misrepresentation** (FAC ¶¶ 920–931). Common law (punitive damages sought under Cal. Civ. Code § 3294, *id*. ¶ 931). Brought by all 20 Plaintiffs against all Defendants (American and Coast).
2. **Count 2: Fraudulent Concealment / Fraud by Non-Disclosure** (FAC ¶¶ 932–944). Common law (punitive damages sought under Cal. Civ. Code § 3294, *id*. ¶ 944). Brought by all 20 Plaintiffs against all Defendants (American and Coast).
3. **Count 3: Promissory Fraud / Fraudulent Inducement** (FAC ¶¶ 945–957). Common law (punitive damages sought under Cal. Civ. Code § 3294, *id*. ¶ 957). Brought by all 20 Plaintiffs against all Defendants (American and Coast).
4. **Count 4: Negligent Misrepresentation** (FAC ¶¶ 958–964). Common law. Brought by all 20 Plaintiffs against all Defendants (American and Coast).
5. **Count 5: Unfair Competition Law ("UCL")** (FAC ¶¶ 965–976). Cal. Bus. & Prof. Code § 17200 *et seq*. Brought by all 20 Plaintiffs against all Defendants (American and Coast).
6. **Count 6: False Advertising Law ("FAL")** (FAC ¶¶ 977–985). Cal. Bus. & Prof. Code § 17500 *et seq*. Brought by all 20 Plaintiffs against all Defendants (American and Coast).
7. **Count 7: Consumers Legal Remedies Act ("CLRA")** (FAC ¶¶ 986–1001). Cal. Civ. Code § 1750 *et seq*. (actual and punitive damages sought, *id*. ¶ 999). Brought by all 20 Plaintiffs against all Defendants (American and Coast).
8. **Count 8: Texas Deceptive Trade Practices–Consumer Protection Act** (FAC ¶¶ 1002–1028). Tex. Bus. & Com. Code § 17.41 *et seq*. Brought by all 20 Plaintiffs against all Defendants (American and Coast).
9. **Count 9: Unruh Civil Rights Act ("Unruh")** (FAC ¶¶ 1029–1037). Cal. Civ. Code § 51 *et seq*. Brought by 11 Plaintiffs (Anderson, Fogel, Hernandez, Khan, Kumar, Little, McGowan, Page, Pearson, Sanderson, Thelus) against all Defendants (American and Coast).

10. **Count 10: Race Discrimination—Equal Credit Opportunity Act** (FAC ¶¶ 1038–1053). 15 U.S.C. § 1691 *et seq*. (punitive damages up to $10,000 sought under § 1691e(b), *id*. ¶ 1053). Brought by all 20 Plaintiffs against all Defendants (American and Coast).
11. **Count 11: Civil Rights Act of 1866** (FAC ¶¶ 1054–1061). 42 U.S.C. § 1981 (punitive damages sought, *id*. ¶ 1060). Brought by all 20 Plaintiffs against all Defendants (American and Coast).
12. **Count 12: Title VI, Civil Rights Act of 1964** (FAC ¶¶ 1062–1069). 42 U.S.C. § 2000d. Brought by all 20 Plaintiffs against Coast only.
13. **Count 13: Breach of Contract** (FAC ¶¶ 1070–1077). Common law; includes breach of the implied covenant of good faith and fair dealing (*id*. ¶ 1075). Brought by all 20 Plaintiffs against Coast only.
14. **Count 14: Breach of Contract** (FAC ¶¶ 1078–1092). Common law; includes breach of the implied covenant of good faith and fair dealing (*id*. ¶ 1084). Brought by all 20 Plaintiffs against American only.
15. **Count 15: Breach of Quasi-Contract against all defendants** (¶¶ 1087–1092)

AA Defendants move to transfer the action from the present District to the Northern District of Texas, Fort Worth Division ("NDTX"). (ECF No. 70, Venue Mot.) More specifically, AA Defendants request the Court, under 28 U.S.C. § 1404(a), to transfer the entire case from this District to the Northern District of Texas, Fort Worth Division ("NDTX-FW"). (Venue Mot.) In the alternative, AA Defendants request the Court to sever eight "Non-California Plaintiffs" and transfer their claims under Rule 21. (Venue Mot. 18:10–19:27.) Plaintiffs oppose AA Defendants' Motion to Transfer Venue. (ECF No. 73. Pl. Opp. Venue Mot.) AA Defendants replied. (ECF No. 74, Reply to Venue Mot.) Plaintiffs filed a sur-reply. (ECF No. 79, Sur-Reply to Venue Mot.)

All named Plaintiffs respond in opposition. (ECF No. 73.) AA Defendants filed a reply. (ECF No. 74.) Plaintiffs filed a sur-reply. (ECF No. 79.)

## II. LEGAL STANDARD

Under 28 U.S.C. § 1404(a), a district court may "transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). After determining it can transfer a civil action, the district court considers "private and public interest factors affecting the convenience of the forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). The private interest factors include:

> (1) The relative ease of access to sources of proof; (2) The availability of compulsory process for attendance of unwilling, and the cost of obtaining willing, witnesses; and (3) All other practical problems that make trial of a case easy, expeditious and inexpensive.

*Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508 (1947). The public interest factors to be considered include:

> (1) The administrative difficulties flowing from court congestion; (2) The local interest in having localized controversies decided at home; (3) The interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; and (4) The unfairness of burdening citizens in an unrelated forum with jury duty.

*Id.*

When considering such a transfer, the court "must evaluate both the convenience of the parties and various public-interest considerations" weighing "the relevant factors and decid[ing] whether, on balance, a transfer would serve 'the convenience of parties and witnesses' and otherwise promote 'the interest of justice.' " *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 62–63 (2013) (quoting 28 U.S.C. § 1404(a)).

## II. ANALYSIS

### A. Forum Selection Clause

As a threshold matter, the Court agrees with AA Defendants that the lack of forum selection clause in a direct agreement between Plaintiffs and AA Defendants does not affect the consideration of other factors under 28 U.S.C. § 1404(a). (*See* Reply to Venue Mot. at 1.) Thus, the Court proceeds with its analysis pursuant to 28 U.S.C. § 1404(a).

### B. Proper Venue

"A civil action may be brought in . . . a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." *See* 28 U.S.C. § 1391(b)(1).

As a threshold matter, though AA Defendants move to transfer the action to NDTX-FW, the former federal statute allocating venue within divisions of the same district was repealed in 1988. *See* 28 U.S.C. Section 1393. *repealed by* Act Nov. 19, 1988, P.L. 100-702, Title X, § 1001(a), 102 Stat. 4664. In addition, the District of Texas Civil Local Rule 83.3 regarding assignment of cases also does not indicate that venue must be established divisionally, stating: "The district judges shall determine the method by which all cases are assigned to individual judges." Accordingly, the Court reconstrues AA Defendants' request as a request to transfer to the Northern District of Texas ("NDTX") more broadly.

Here, AA Defendants are both headquartered in Fort Worth, Texas. (FAC ¶¶ 38–39; Venue Mot. 9:14–9:24.) Thus, the Court finds venue in NDTX is proper as to AA Defendants. *See* 28 U.S.C. § 1391(b)(1) ("A civil action may be brought in . . . a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located.").

Though Coast's corporate headquarters are located in San Diego, California (FAC ¶ 37), Coast operates two flight schools in Texas, including one within the Northern District of Texas (in Dallas, Texas) (*id.* ¶ 60; Venue Mot. 9:24–10:2). In addition, several of Plaintiffs' claims against Coast arise from Coast's operation of the flight schools and allegedly deceptive advertising—including targeting the Northern District of Texas (*see* Counts 8, 12, 13). Thus, Court finds venue in NDTX is also proper as to Coast.[1] *See San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*, 65 F.4th 1012, 1034–35 (9th Cir. 2023) ("A defendant is subject to specific personal jurisdiction in the forum state if: (1) the defendant performed an act or consummated a transaction by which it purposely directed its activity toward the forum state; (2) the claims arose out of defendant's forum-

[1] Since the Court finds Texas has jurisdiction over Coast, the Court finds it does not need to reach the issue of whether Coast consented to waiving personal jurisdiction.

related activities; and (3) the exercise of personal jurisdiction is reasonable."); *Applewhite v. Metro Aviation, Inc.*, 875 F.2d 491, 496 (5th Cir. 1989) ("[A] single or limited conduct will justify the exercise of *in personam* jurisdiction.").

Next, the Court finds this District is also an appropriate venue for the present action as a "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). Given that Coast's headquarters are in San Diego (FAC ¶ 37), and that Coast promoted AACA training within San Diego (FAC ¶ 48) and sent promotional materials from California to Plaintiffs in other states (FAC ¶¶ 150–155, 170–172), a substantial part of the allegedly deceptive marketing underlying several causes of action occurred in California (Counts 1, 2, 3, 4, 5, 6, 7, 8). In addition, most Plaintiffs (11 out of 20) participated in AACA training in San Diego (FAC ¶¶ 17, 20, 23, 26–28, 30, 33–36)—and the alleged discrimination and program expulsion underlying Plaintiffs' remaining causes of action took place during AACA training programs (Counts 9, 10, 11, 12, 13, 14, 15). Relatedly, AA Defendants allegedly conducted AACA training site visits, town halls, and events in San Diego and ratified Coast's conduct in California. (FAC ¶¶ 51, 359.)

Given that both NDTX and this District are appropriate venues for the present action, the Court next considers private and public interest factors in evaluating AA Defendants' request to transfer venue. *Atl. Marine Const. Co.*, 571 U.S. at 62–63 (citing 28 U.S.C. § 1404(a)).

### C. Private Interest Factors

#### 1. Plaintiffs' Choice of Venue

AA Defendants argue Plaintiffs' choice of venue is substantially reduced given that 13 out of 20 Plaintiffs do not reside in the forum. (Venue Mot. 10:13–21.) Plaintiffs respond that since AA Defendants do not present any evidence of forum shopping, Plaintiffs' choice to file the present action in the Southern District of California should be afforded great weight. (Pl. Opp. Venue Mot. 3:26–4:11.)

The Court agrees that the fact that most Plaintiffs do not reside in this forum weighs in favor of transferring the action elsewhere. *See Cung Le v. Zuffa, LLC*, 108 F. Supp. 3d 768, 779 (N.D. Cal. 2015) ("[T]he majority of the named plaintiffs do not reside in this district, rendering their choice of forum less significant."). However, since AA Defendants do not provide evidence of forum shopping, it is appropriate to grant some weight toward Plaintiffs' choice of forum. *See Urista v. Wells Fargo & Co.*, No. 20-cv-01689-H-AHG, 2020 WL 7385847, at *2–3 (S.D. Cal. Dec. 16, 2020) ("[E]ven though this is a class action, [plaintiff's] choice is entitled to deference because there is no evidence that [plaintiff] engaged in forum shopping and both [plaintiff] and [defendants] have significant contacts with the [forum], including those that gave rise to this action.").

Thus, given that at least seven of the Plaintiffs do reside in the forum and that there is no evidence of forum shopping, the Court finds this factor weighs slightly against transferring the action out of the forum.

**2. Convenience of Parties**

"The convenience of the parties is ... an important factor in determining whether to allow a transfer of venue." *Arreola v. Finish Line*, No. 14-CV-03339-LHK, 2014 WL 6982571, at *9 (N.D. Cal. Dec. 9, 2014) (quoting *Jarvis v. Marietta Corp.,* No. C 98–4951, 1999 WL 638231 MJJ, at *4 (N.D.Cal. Aug. 12, 1999)).

AA Defendants argue that Texas is more convenient for six of the Plaintiffs who reside in Texas; and for AA Defendants who are headquartered in Texas. (Venue Mot. at 10–11.) Plaintiffs argue that transfer would inconvenience most Parties and that they would need to obtain counsel licensed in Texas. (Pl. Opp. Venue Mot at 4–5.) According to Plaintiffs' FAC, eight Parties reside in Texas (though only four in Dallas) (FAC ¶¶ 17, 19, 24, 27, 29, 31), six Parties reside in California (*id*. ¶¶ 20, 23, 30, 34, 35, 37), and nine Parties live in neither or are their residence is ambiguous (*id*. ¶¶ 18, 21, 22, 25, 26, 28, 32, 33, 36).

Given that this action involves Parties residing in several different states, the Court finds that this factor is neutral. *See Flo & Eddie, Inc. v. Sirius XM Radio Inc.*, No. CV 13-

5693 PSG (RZX), 2013 WL 12137591, at *2 (C.D. Cal. Dec. 3, 2013) (finding convenience of parties and witnesses to be neutral because "whether this case proceeds in California or New York, one of the parties, and its party witnesses, will need to travel during the course of the litigation.").

**3. Convenience of Witnesses**

The convenience of witnesses is often considered the most important consideration in determining whether to transfer a case under § 1404. *See Hawkins v. Gerber Prods. Co.*, 924 F. Supp. 2d 1208, 1215 (S.D. Cal. 2013); *Metz v. U.S. Life Ins. Co. in City of New York*, 674 F. Supp. 2d 1141, 1147 (C.D. Cal. 2009). In order to properly assess the convenience of witnesses, the parties should identify the witnesses, the location of the witnesses, and the content and relevance of the witnesses' testimony. *See Florens Container v. Cho Yang Shipping*, 245 F.Supp.2d 1086, 1092–93 (N.D. Cal. 2002).

"[P]articular consideration is given to the convenience of *non-party* witnesses" in the transfer analysis. *Am. GNC Corp. v. GoPro, Inc.*, No. 18-CV-00968-BAS-BLM, 2018 WL 6074395, at *18 (S.D. Cal. Nov. 6, 2018) (quoting *Credit Acceptance Corp. v. Drivetime Auto. Grp., Inc*., No. CV 13-01531 (MRWX), 2013 WL 12124382, at *4 (C.D. Cal. Aug. 5, 2013)). The central inquiry is whether such witnesses are subject to compulsory process in the judicial forum where the case is being litigated so that their testimony can be compelled for trial if necessary. *See In re Ferrero Litig.*, 768 F. Supp. 2d 1074, 1080 (S.D. Cal. 2011); *Newegg, Inc. v. Telecomm'cn Sys.*, No. C 09-0982 JL, 2009 WL 1814461, at *7 (N.D. Cal. June 23, 2009).

Because employers can compel the testimony of their employees, considerably less weight is given to the convenience of a party's employee-witness, as opposed to a true third-party witness. *See Vesta Corp.*, 129 F. Supp. 3d at 1036; *Lax*, 65 F.Supp.3d at 779; *Hawkins*, 924 Supp.2d at 1215; *Metz*, 674 F.Supp.2d at 1147. Similarly, unless evidence is presented that suggests otherwise, because former employees are likely to voluntarily testify on behalf of their former employers, former employees are viewed in the same light as current employees. *See Vesta Corp.*, 129 F.Supp.3d at 1036–37.

First, Plaintiffs' non-Party witnesses' LinkedIn profiles demonstrate those witnesses' likely residence in San Diego, California. (ECF No. 73-1, Exs. A–W, Bireda Decl.) Though AA Defendants argue these profiles are inadmissible under the Federal Rules of Evidence (ECF No. 74 at 5:13–6:5, Reply to Mot. to Transfer), "[S]ection 1404(a) does not require that affidavits set forth facts as would be admissible into evidence at trial." *McNair v. Monsanto Co.*, 279 F. Supp. 2d 1290, 1299 (M.D. Ga. 2003); *see also Andersen v. Hallier Props., LLC*, No. CV 09-8323-GW(PJWX), 2010 WL 11518540, at *2 (C.D. Cal. Mar. 8, 2010) (same). The Court, thus, declines to strike them at this stage.

Second, since AA Defendants do not provide contrary evidence that the named former employees are unlikely to testify on behalf of their former employers, the Court finds that any of Defendants' former employees purported to be non-Parties should instead, be treated as Party witnesses. *See Vesta Corp.*, 129 F.Supp.3d at 1036–37.

Considering the above, five of Plaintiffs' proposed non-Party witnesses are not either former or current employees of AA Defendants or of Coast, including: Nate Costa (Bireda Decl. ¶ 22), Jamaica Hines (Bireda Decl. ¶ 23), Austin Hathcoat (Bireda Decl. ¶ 24), Zachary Ehlers (Bireda Decl. ¶ 25), and Connor Meznarich (Bireda Decl. ¶ 26). All five of the listed non-Party witnesses live in San Diego.

Comparatively, only one of AA Defendants' proposed non-Party witnesses is not either a former or current employee of AA Defendants or of Coast: Jamie Fatheree, who is a current AAFCU employee. (ECF No. 70-4, Ex. G ¶ 4.) AA Defendants place Jamie Fatheree in Texas. (Reply to Venue Mot. 4:10-13 (non-Party witnesses include "a representative of AAFCU" who could reside in the Northern District of Texas).)

Even assuming AA Defendants have sufficiently claimed that Jamie Fatheree resides within the Northern District of Texas for purpose of their Motion to Transfer Venue, a greater number of proposed non-Party witnesses reside in this District than in NDTX. Therefore, the Court finds that convenience of witnesses weighs against transferring the present action to NDTX.

**4. Ease of Access to Evidence**

AA Defendants argue that most documentary proof is stored on servers in their headquarters in Fort Worth, Texas and that AAFCU records are located in Texas. (Venue Mot. 15:3–14.) Plaintiffs do not dispute the location of the relevant servers, and instead argue that courts treat "ease of access to evidence" is neutral regarding electronically stored information. (Pl. Opp. Venue Mot. at 6:23–27.)

The Court agrees with Plaintiffs. "[I]n the age of electronically stored information, the ease of access to evidence is neutral because much of the evidence in this case will be electronic documents, which are relatively easy to obtain in any district." *See Simpson Strong-Tie Co., Inc. v. Oz-Post Int'l, LLC*, 2018 WL 3956430, at *8 (N.D. Cal. Aug. 17, 2018). While there may be marginal advantages and cost-saving mechanism regarding access to evidence in Texas, this factor is essentially neutral.

**5. Relative Means of the Parties**

Plaintiffs argue that this factor should weigh against transfer because Plaintiffs are "deeply indebted" while American Airlines (operated by AA Defendants) is "the largest airline in the world." (Pl. Opp. Venue Mot. 9:4.) Plaintiffs further argue that transferring to NDTX would result in litigation costs to Plaintiffs because Plaintiffs would need to find new counsel in Texas. (*Id*. 9:5–11.) Defendants reply that courts routinely transfer cases where parties have different relative wealth or have counsel not licensed in the transferred forum. (Reply to Venue Mot. 8:18–26.)

Although a party's financial situation is relevant in the venue transfer analysis, it is not entitled to great weight. *Burke v. USF Reddaway, Inc.,* 2013 WL 85428, at *2 (E.D.Cal. Jan. 8, 2013); *see also Bos. v. AECOM*, No. 2:20-CV-02077-AB-PJW, 2020 WL 6083662, at *2 (C.D. Cal. Aug. 5, 2020) ("In terms of venue, the lack of availability of financial means favors the Plaintiff."). Thus, the Court finds this factor weighs against transferring this action to NDTX, but does not weigh heavily in the overall Section 1404(a) analysis.

**D. Public Interest Factors**

**1. Relative Degrees of Court Congestion and Time to Trial in Each Forum**

AA Defendants present evidence that the Southern District of California averages 38 months to trial; as opposed to 24.4 months in the NDTX. (Venue Mot. 15:17–19.) Plaintiffs assert that the Southern District of California has fewer pending cases per judge (443 cases as opposed to 536), less backlog, and faster median disposition (5.3 versus 5.8 months).

Courts in the Ninth Circuit consider both "the relative court congestion and time of trial in each forum." *Walters v. Famous Transports, Inc.*, 488 F. Supp. 3d 930, 936 (N.D. Cal. 2020) (citing *Vu v. Ortho-McNeil Pharm., Inc.*, 602 F. Supp. 2d 1151, 1156 (N.D. Cal. 2009)). Although this District has fewer cases per judge (and thus, is less congested), the time to trial is faster in NDTX. Accordingly, this factor is neutral.

**2. Courts' Relative Familiarity with Governing Law**

AA Defendants argue that this factor is neutral because "only" four (4) of the fifteen (15) claims arise under California statutes; and it is unclear which state's law applies to the remaining claims. (Venue Mot. 15:25–17:5). Plaintiffs argue that this factor weighs against transfer, since the case involves four California statutes (UCL, FAL, CLRA, Unruh) and the Court can adjudicate the Texas Deceptive Trade Practices Act claim. (Pl. Opp. Venue Mot. at 7.)

Given that the FAC evokes both California and Texas law, the Court finds that this factor is neutral. *See Su v. World Kuk Sool Ass'n Inc.*, No. 23-CV-01570-JCS, 2023 WL 5498731, at *10 (N.D. Cal. Aug. 23, 2023) ("As to the familiarity of each forum with the applicable law, the Court finds that this factor is neutral as Su invokes both Texas and California law in the FAC.").

**3. Local Interest in Deciding Localized Controversies at Home**

AA Defendants argue that Texas' local interest in this action is greater because two defendants headquartered there, and most AACA training giving rise to the present action took place in Texas. (Venue Mot. 17:6–16.) AA Defendants also assert that California's interest in non-residents is "attenuated" under *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 594 (9th Cir. 2012). (Venue Mot. 17:13–16.) Plaintiffs assert that California

has a strong interest in the case given Plaintiffs' claims based in California statutes. (Pl. Opp. Venue Mot. 7:17–8:6.)

Given that the allegedly infringing conduct underlying this action (*e.g.*, AACA training and program advertising) takes place in both Texas and California and all Defendants conduct business in both states, the Court concludes that the local interest in deciding localized controversies at home is neutral.[2] *See, e.g., Brighton Collectibles, Inc. v. Bi-Lo, LLC*, No. 07-CV-1073 H (POR), 2008 WL 11508678, at *2 (S.D. Cal. Mar. 11, 2008) (finding the same where infringing conduct takes place in both the current forum and proposed transferee forum); *Kisman v. United Parcel Serv., Inc.*, No. 2:21-CV-03164-AB (EX), 2021 WL 5016903, at *11 (C.D. Cal. Aug. 13, 2021) (same).

### E. Balancing Factors

Since Plaintiffs' choice of venue, convenience of witnesses, and the relative means of Parties weigh against transfer—and the remaining factors are neutral—the Court finds that the overall Section 1404(a) analysis weighs against transferring the action to NDTX.

## IV. CONCLUSION

For the reasons above, the Court **DENIES** AA Defendants' Motion to Transfer Venue. (ECF No. 70.)

**IT IS SO ORDERED.**

**DATED: September 2, 2026**

**Hon. Cynthia Bashant, Chief Judge**
**United States District Court**

---

[2] The Court does not need to reach the issue of whether the feasibility of consolidation weighs towards or against transfer since Parties do not allege any ongoing proceedings in NDTX.