**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

KENDALL ANDERSON, *et al.*,

Plaintiffs,

v.

AMERICAN AIRLINES, INC., *et al.*,

Defendants.

Case No. 25-cv-03609-BAS-MSB

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS AMERICAN AIRLINES GROUP, INC. AND AMERICAN AIRLINES, INC.'S MOTION TO DISMISS (ECF No. 69)**

Presently before the Court is Defendants American Airlines, Inc. and American Airlines Group, Inc.'s ("AA Defendants") Motion to Dismiss ("Motion"). (ECF No. 69.) For the reasons below, the Court **GRANTS IN PART** and **DENIES IN PART** AA Defendants' Motion and **DISMISSES WITHOUT PREJUDICE** the claims identified below. (*Id.*) For dismissed claims, Plaintiffs may file an Amended Complaint by **November 5, 2026**.

## I. BACKGROUND

AA Defendants announced the American Airlines Cadet Academy ("AACA") in April 2018, describing it as a "first-of-its-kind" program to give aspiring pilots the training, financing, and mentoring needed to fly for the world's largest airline. (First Am. Compl.

("FAC"), ECF No. 62 ¶¶ 1, 52, 99.) AA Defendants told investors that they needed a pipeline of pilot candidates and that the AACA was one of the initiatives that would deliver it. (*Id.* ¶ 53.) Publicly, AA Defendants framed the program's purpose as diversifying a profession that had long excluded people of color. (*Id.* ¶¶ 52, 57–58, 231–32.)

Beginning in January 2019, AA Defendants partnered with Defendant Coast Flight Training and Management, Inc. ("Coast") to run the AACA at Coast's campuses in San Diego, Dallas, and San Marcos. (*Id.* ¶¶ 41, 60.) AA Defendants recruited, interviewed, and selected the cadets; Coast provided the training. (*Id.* ¶¶ 42, 61.) Both AA Defendants are alleged to have operated the program jointly. (*Id.* ¶¶ 40, 62.) Defendants also designated "partner lenders"—Discover, Sallie Mae, and the American Airlines Federal Credit Union—and emailed cadets links to loan applications; Coast then certified the loans, received disbursements directly, held the funds in its own prepaid accounts, and controlled the release of living-expense money to cadets. (*Id.* ¶¶ 66–78.)

All 20 Plaintiffs are non-white, and most came to the AACA from careers outside aviation. (*Id.* ¶¶ 402, 428, 447, 475, 502, 521, 542, 577, 601, 633, 657, 688, 709, 730, 757, 782, 810, 838, 865, 897.) Plaintiffs Kendall Anderson, Faith Little, and Mathias Thelus, however, had already earned a Private Pilot License before they began, and the AACA was marketed to such cadets on a shortened 10-month track. (*Id.* ¶¶ 409, 695, 902, 921, 946, 1073.)

Plaintiffs allege that upon seeing AACA program advertising, they believed the AACA program would make them commercial pilots in 12 months for a fixed, loan-covered price. (*Id.* ¶¶ 100–06, 144–49.) To pursue the AACA program, Plaintiffs quit jobs, declined college offers, and borrowed $52,000 to $126,000 to cover training and living expenses. (*Id.* ¶¶ 4, 7, 380.) Each relocated to a Coast campus, several across the country. (*Id.* ¶¶ 7, 17–36.) None of the Plaintiffs finished the AACA program. (*Id.* ¶ 117.) Sixteen were terminated, and four were allegedly forced to resign. (*Id.* ¶¶ 15, 326, 329.)

Despite leaving the AACA program without obtaining all of the ratings it promised—nine Plaintiffs received no ratings at all, and the remainder received only some

(*id.* ¶ 161)—Plaintiffs currently carry loans from the program, averaging about $90,000, some at 14% interest, with missed payments, damaged credit, and at least one default. (*Id.* ¶¶ 379, 385–86.)

On December 16, 2025, Plaintiffs filed the present action against Defendants American Airlines Federal Credit Union ("AAFCU"), Coast, and AA Defendants (collectively, "Defendants"). (ECF No. 1.) On April 7, 2026, Plaintiffs voluntarily dismissed all claims against AAFCU. (ECF No. 55.) Two weeks later, Plaintiffs filed the FAC. (ECF No. 62.)

In the FAC, Plaintiffs bring the following causes of action:

1. **Count 1: Fraud / Intentional Misrepresentation** (FAC ¶¶ 920–31). Common law (punitive damages sought under Cal. Civ. Code § 3294, *id.* ¶ 931). Brought by all 20 Plaintiffs against all Defendants.
2. **Count 2: Fraudulent Concealment / Fraud by Non-Disclosure** (FAC ¶¶ 932–44). Common law (punitive damages sought under Cal. Civ. Code § 3294, *id.* ¶ 944). Brought by all 20 Plaintiffs against all Defendants.
3. **Count 3: Promissory Fraud / Fraudulent Inducement** (FAC ¶¶ 945–57). Common law (punitive damages sought under Cal. Civ. Code § 3294, *id.* ¶ 957). Brought by all 20 Plaintiffs against all Defendants.
4. **Count 4: Negligent Misrepresentation** (FAC ¶¶ 958–64). Common law. Brought by all 20 Plaintiffs against all Defendants.
5. **Count 5: Unfair Competition Law ("UCL")** (FAC ¶¶ 965–76). Cal. Bus. & Prof. Code § 17200 *et seq.* Brought by all 20 Plaintiffs against all Defendants.
6. **Count 6: False Advertising Law ("FAL")** (FAC ¶¶ 977–85). Cal. Bus. & Prof. Code § 17500 *et seq.* Brought by all 20 Plaintiffs against all Defendants.
7. **Count 7: Consumers Legal Remedies Act ("CLRA")** (FAC ¶¶ 986–1001). Cal. Civ. Code § 1750 *et seq.* (actual and punitive damages sought, *id.* ¶ 999). Brought by all 20 Plaintiffs against all Defendants.

8. **Count 8: Texas Deceptive Trade Practices–Consumer Protection Act** (FAC ¶¶ 1002–28). Tex. Bus. & Com. Code § 17.41 *et seq.* Brought by all 20 Plaintiffs against all Defendants.
9. **Count 9: Unruh Civil Rights Act ("Unruh")** (FAC ¶¶ 1029–37). Cal. Civ. Code § 51 *et seq.* Brought by 11 Plaintiffs (Anderson, Fogel, Hernandez, Khan, Kumar, Little, McGowan, Page, Pearson, Sanderson, Thelus) against all Defendants.
10. **Count 10: Race Discrimination—Equal Credit Opportunity Act ("ECOA")** (FAC ¶¶ 1038–53). 15 U.S.C. § 1691 *et seq.* (punitive damages up to $10,000 sought under § 1691e(b), *id.* ¶ 1053). Brought by all 20 Plaintiffs against all Defendants.
11. **Count 11: Civil Rights Act of 1866** (FAC ¶¶ 1054–61). 42 U.S.C. § 1981 (punitive damages sought, *id.* ¶ 1060). Brought by all 20 Plaintiffs against all Defendants.
12. **Count 12: Title VI, Civil Rights Act of 1964** (FAC ¶¶ 1062–69). 42 U.S.C. § 2000d. Brought by all 20 Plaintiffs against Coast.
13. **Count 13: Breach of Contract** (FAC ¶¶ 1070–77). Common law; includes breach of the implied covenant of good faith and fair dealing (*id.* ¶ 1075). Brought by all 20 Plaintiffs against Coast.
14. **Count 14: Breach of Contract** (FAC ¶¶ 1078–86). Common law; includes breach of the implied covenant of good faith and fair dealing (*id.* ¶ 1084). Brought by all 20 Plaintiffs against AA Defendants.
15. **Count 15: Breach of Quasi-Contract** (FAC ¶¶ 1087–92). Common law; pleaded in the alternative to Counts 13 and 14 (*id.* ¶ 1088). Brought by all 20 Plaintiffs against all Defendants.

AA Defendants move under Federal Rule of Civil Procedure 12(b)(2) to dismiss Plaintiffs' claims asserted in the FAC on jurisdictional grounds, and under Rule 12(b)(6) to dismiss all claims in the FAC asserted against AA Defendants. ("AA MTD," ECF No.

69.) Parties fully briefed AA Defendants' Motion. (ECF Nos. ("Plaintiffs' Opp.") 71, ("AA MTD Reply") 75.)

## II. LEGAL STANDARD

### A. Rule 12(b)(2)

When raised as a defense by motion, Rule 12(b)(2) authorizes the dismissal of an action for lack of personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2). When a dispute between the parties arises concerning whether personal jurisdiction over a defendant is proper, "the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Will Co. v. Lee*, 47 F.4th 917, 921 (9th Cir. 2022). When the defendant's motion is based on written materials, and no evidentiary hearing is held, the court will evaluate only whether the plaintiff makes a prima facie showing of personal jurisdiction based on the plaintiff's pleadings and affidavits. *Id.* The court must take unchallenged allegations in the complaint as true, and conflicts between the parties over statements within any affidavits must be resolved in favor of the plaintiff. *Id.*

### B. Rule 12(b)(6)

Rule 12(b)(6) allows a party to move to dismiss based on the legal sufficiency of the claims asserted in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The court must accept all factual allegations pleaded in the complaint as true and draw all reasonable inferences from them in favor of the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations; rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.' " *Id.* (quoting *Twombly*, 550 U.S. at 557).

## III. ANALYSIS

### A. Personal Jurisdiction

Personal jurisdiction in federal court can be established through either general or specific jurisdiction. *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., S.F. Cnty.*, 582 U.S. 255, 262 (2017).

#### 1. General Jurisdiction

For general jurisdiction over a corporation, "the place of incorporation and principal place of business are paradigm bases." *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 866 (S.D. Cal. 2023) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)). A defendant's contacts must also be so "continuous and systematic as to render [them] essentially at home in the forum state." *LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 859 (9th Cir. 2022). Here, the Court agrees with AA Defendants that they are not subject to general jurisdiction in California (*see* AA MTD 9:26–11:8) because Plaintiffs have failed to allege: (1) AA Defendants are either headquartered or incorporated in California; or (2) AA Defendants' California contacts are so continuous and systematic as to render them essentially at home in California. Plaintiffs allege only that AA Defendants maintain offices in and conduct business throughout California, including within this District (FAC ¶¶ 38–39), which does not suffice under *Daimler*. Plaintiffs do not discuss AA Defendants' argument regarding general jurisdiction in their opposition. (Plaintiffs' Opp.) Thus, the Court next considers Plaintiffs' arguments regarding specific jurisdiction.

#### 2. Specific Jurisdiction

A defendant who is not subject to general jurisdiction can only be subject to a state's jurisdiction if the plaintiff's claims are related to the defendant's activities in that state sufficient to establish specific jurisdiction. *Walden v. Fiore*, 571 U.S. 277, 283 n.6 (2014). The Ninth Circuit put forth a three-pronged test for specific jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of

> conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.*, it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). The plaintiff bears the burden of proving the first two prongs; if the plaintiff succeeds, the burden shifts to the defendant on the third prong to prove that jurisdiction is unreasonable. *Id.* If any prong is not satisfied, then jurisdiction in the forum would deprive the defendant of due process of law. *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1208 (9th Cir. 2020).

Under the first prong of specific jurisdiction, purposeful availment and purposeful direction are "two distinct concepts." *Schwarzenegger*, 374 F.3d at 802. "A purposeful availment analysis is most often used in suits sounding in contract," whereas "[a] purposeful direction analysis . . . is most often used in suits sounding in tort." *Id.*

Here, Plaintiffs' claims against AA Defendants sound both in tort and in contract. Plaintiffs' fraud-based claims (Counts 1–4), consumer protection claims (Counts 5–8), and federal and state statutory civil rights claims (Counts 9–11) sound in tort. *See Zhu v. Li*, No. 19-CV-02534-JSW, 2023 WL 4770431, at *4 (N.D. Cal. July 26, 2023) ("Plaintiff's claim[] for . . . intentional misrepresentation sound[s] in tort."); *Quigley v. Guvera IP Pty Ltd.*, No. C 10-03569 CRB, 2010 WL 5300867, at *3 (N.D. Cal. Dec. 20, 2010) ("Unfair competition claims are claims in tort."); *cf. In re Boise Cnty.*, 465 B.R. 156, 178 n.9 (Bankr. D. Idaho 2011) ("An action for discrimination under the Fair Housing Act, such as the one brought by Alamar against the County, is, in effect, a tort action."); *Meyer v. Holley*, 537 U.S. 280, 287 (2003) ("Where Congress, in other civil rights statutes, has not expressed a contrary intent, the Court has drawn the inference that it intended ordinary rules to apply."). Meanwhile, Plaintiffs' claim against AA Defendants for breach of contract sounds in contract (Count 14). (FAC ¶¶ 1078–86.)

Thus, the Court analyzes Plaintiffs' tort-based claims through "purposeful direction" and their contract-based claims through "purposeful availment."

**i. Purposeful Direction**

To assess whether a defendant purposefully *directed* its activities at the forum state, courts apply the "effects" test from *Calder v. Jones*, 465 U.S. 783 (1984). The defendant must have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Shawarma Stackz LLC v. Jwad*, No. 21-CV-01263-BAS-BGS, 2021 WL 5827066, at *7 (S.D. Cal. Dec. 8, 2021) (quoting *Schwarzenegger*, 374 F.3d at 803). All three components must be met for a defendant to have purposefully directed activities to the forum state. *See Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 577 (9th Cir. 2018).

The Court finds Plaintiffs have sufficiently alleged that their fraud-based and consumer protection claims (Counts 1–8) are rooted in AA Defendants' intentional acts, which were aimed at California and caused harms likely to be suffered in California. (*See* Plaintiffs' Opp. 8:4–10:20.) More specifically, Plaintiffs allege AA Defendants marketed the AACA program through their own channels reaching California and directly partnered with Coast to market the AACA program in California. (FAC ¶¶ 10, 44, 47–48, 63–65, 238, 240–43, 245, 247–49, 251–54.)

Since Plaintiffs claim AA Defendants oversaw Coast's marketing of the AACA program in California, the Court also finds Plaintiffs have alleged that the discriminatory conduct underlying Plaintiffs' ECOA claim (Count 10)—targeting non-white people with allegedly misleading advertisements for the AACA program (*id.* ¶¶ 269, 1048–49)—is expressly aimed at California.

The Court also finds Plaintiffs' remaining civil rights claims (Counts 9 and 11) involve AA Defendants' activities purposefully directed at California. For instance, Plaintiffs allege AA Defendants received but failed to address complaints of race discrimination from AACA cadets at each of Coast's three campuses, including in San Diego, California. (*Id.* ¶¶ 348–52, 358, 366, 370–76, 1034.) Plaintiffs claim AA

Defendants' failure to address their complaints contributed to every Plaintiff's termination or forced resignation from the AACA. (*Id.* ¶¶ 350, 352–53, 1033, 1058.) Without reaching the merits of these claims, the Court finds Plaintiffs have sufficiently alleged that the conduct underlying Counts 9 and 11 is also purposefully directed at California.

**ii. Purposeful Availment**

"To have purposefully availed itself of the privilege of doing business in the forum, a defendant must have 'performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state.' " *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008) (quoting *Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990)). The defendant must "take[ ] deliberate actions within the forum state or create[ ] continuing obligations to forum residents." *Hirsch v. Blue Cross, Blue Shield of Kan. City*, 800 F.2d 1474, 1478 (9th Cir. 1986). Ultimately, the court's evaluation of what constitutes intent to take deliberate actions "is not rigid and formalistic, but rather practical and pragmatic." *Boschetto*, 539 F.3d at 1016.

The Court finds Plaintiffs have alleged AA Defendants purposefully availed themselves of California by: (1) choosing to contract with Coast, which is incorporated and headquartered in San Diego (FAC ¶¶ 37, 46); (2) contracting with Plaintiffs residing in California and inducing Plaintiffs who previously resided out of state to relocate to San Diego for the AACA program (*id.* ¶ 49); and (3) having AA Defendants' representatives pay monthly visits to Coast's AACA locations—including in San Diego, California—and host events with AACA program trainees (*id.* ¶¶ 359, 372, 376). AA Defendants do not contest that they have purposefully availed themselves of California. (*See* AA MTD Reply 1:2–2:15.) Thus, the Court finds it also has jurisdiction over Plaintiffs' breach of contract claim (Count 14) against AA Defendants.

* * *

For the reasons above, the Court finds it can exercise jurisdiction over Plaintiffs' claims against AA Defendants and **DENIES** AA Defendants' Motion to Dismiss the action under Rule 12(b)(2).

**B. Pleading Standards**

Rule 8(a)(2) of the Federal Rules of Civil Procedure sets forth the procedural requirements for pleading a claim in federal court. Under Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8 "mean[s] what it sa[ys]." *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 168 (1993). "The Rule 8 standard contains a powerful presumption against rejecting pleadings for failure to state a claim." *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). A claimant need not "set out in detail the facts upon which he bases his claim." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Rather, the complaint need only provide the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.* Accordingly, in evaluating the sufficiency of a complaint, the court's role "is necessarily a limited one," confined to evaluating "not whether a plaintiff will ultimately prevail," but "whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Indeed, " 'it may appear on the face of the pleadings that a recovery is very remote and unlikely[,] . . . that is not the test.' " *Gilligan*, 108 F.3d at 249 (quoting *Scheuer*, 416 U.S. at 236).

Here, in their Motion, AA Defendants argue Plaintiffs fail to plead conduct specific to Defendant American Airlines Group, Inc. ("AAG"), despite acknowledging that Defendant American Airlines, Inc. is AAG's subsidiary. (AA MTD 13:24–14:20.)

The Court agrees with Plaintiffs (Plaintiffs' Opp. 12:5–13:3) that Ninth Circuit "precedent does not prohibit collective pleading so long as the complaint gives defendants fair notice of the claims against them." *Briskin v. Shopify, Inc.*, 135 F.4th 739, 762 (9th Cir. 2025) (en banc). AA Defendants have not argued the FAC has failed to provide notice of the allegedly illegal conduct underlying Plaintiffs' claims. In addition, Plaintiffs affirmatively allege AA Defendants acted jointly in their violative conduct (*i.e.*, AA Defendants work jointly to operate and administer the AACA program) and even present AAG's own admission to that effect. (*See* FAC ¶¶ 40, 62.) Thus, the Court finds Plaintiffs

have sufficiently met the Rule 8(a)(2) pleading standard in the FAC. *See Briskin*, 135 F.4th at 762 (finding a complaint that collectively pled three corporate defendants engaged in the same scheme passed Rule 12(b)(6) muster).

Though AA Defendants argue in their Reply that Plaintiffs must also meet the heightened Rule 9(b) standard for Plaintiffs' claims sounding in fraud (Counts 1, 2, 3, and 4) (AA MTD Reply 4:10–5:1), the Court declines to consider arguments raised for the first time in reply briefing. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief."). Thus, the Court finds Plaintiffs have met the relevant pleading standards in asserting their claims against AA Defendants.

### C. Extraterritorial Application of California and Texas Statutes

#### 1. California Statutes (Counts 5–7)

AA Defendants move to dismiss Plaintiffs' UCL (Count 5), FAL (Count 6), and CLRA (Count 7) claims based on their impermissible extraterritorial application. (AA MTD 14:21–15:15.)

"California law embodies a presumption against the extraterritorial application of its statutes." *Churchill Vill., L.L.C. v. Gen. Elec. Co.*, 169 F. Supp. 2d 1119, 1126 (N.D. Cal. 2000), *aff'd*, 361 F.3d 566 (9th Cir. 2004). Courts have held the UCL and CLRA do not support claims by non-California residents where none of the alleged misconduct or injuries occurred in California. *Churchill Vill., L.L.C.*, 169 F. Supp. 2d at 1126 (citing *Norwest Mortg., Inc. v. Superior Ct.*, 72 Cal. App. 4th 214, 222 (1999)) (discussing UCL); *Narayanan v. Apple Inc.*, 824 F. Supp. 3d 923, 942 (N.D. Cal. 2026) (citing *Cooper v. Simpson Strong-Tie Co.*, 460 F. Supp. 3d 894, 911 (N.D. Cal. 2020)) (discussing both CLRA and UCL). Similarly, California's FAL prohibits false or misleading statements made "before the public in this state" and "from this state before the public in any state." Cal. Bus. & Prof. Code § 17500.

However, a non-California resident may have standing under the UCL, the CLRA, and the FAL if either (1) the injury occurred in California, or (2) the defendant's conduct

occurred in California. *See Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207–08 (2011); *Tindenberg v. Bidz.com, Inc.*, No. CV 08-5553 PSG (FMOx), 2009 WL 605249, at *4 (C.D. Cal. Mar. 4, 2009) (looking to "whether the injury occurred in California and whether the conduct of Defendants occurred in California" in determining whether a non-California resident could avail herself of the UCL and the FAL); *Castagnola v. Hewlett-Packard Co.*, No. C 11-05772 JSW, 2012 WL 2159385, at *4 (N.D. Cal. June 13, 2012) ("A non-California resident may bring claims under the UCL and the CLRA, if they can allege misconduct that occurs within or emanates from California."). In evaluating whether wrongful conduct occurred in California, courts look to where the defendant does business, where it has its principal offices, and where its decisions were made. *See Zakikhani v. Hyundai Motor Co.*, No. 820CV01584SBJDEX, 2022 WL 1740034, at *4 (C.D. Cal. Jan. 25, 2022).

As a threshold matter, the Parties do not dispute that Plaintiffs residing in California can bring causes of action under California statutes for harm Plaintiffs experienced in California stemming from AA Defendants' alleged misrepresentations. However, Plaintiffs neither alleged to have resided in California nor to have trained on an AACA campus in California ("Non-California Plaintiffs") may be precluded from extraterritorial enforcement of their UCL, FAL, and CLRA claims. Non-California Plaintiffs include: Plaintiff Christopher Chodkowski (FAC ¶ 18), Plaintiff Ludgy Germain (*id.* ¶ 21), Plaintiff Disney-Sean Grannell (*id.* ¶ 22), Plaintiff Jamaal Johnson (*id.* ¶ 24), Plaintiff Krystall Jones (*id.* ¶ 25), Plaintiff Honnah Lusby (*id.* ¶ 29), Plaintiff Ketsia Mianda (*id.* ¶ 31), and Plaintiff Thiago Ortega (*id.* ¶ 32).

AA Defendants move to dismiss Non-California Plaintiffs' UCL, FAL, and CLRA claims on the basis that those claims cannot be based upon extraterritorial conduct or injuries occurring outside of California. (AA MTD 14:21–15:15.) Plaintiffs counter that their UCL, FAL, and CLRA claims are based upon allegedly misleading advertising emanating from California to Non-California Plaintiffs' resident states—disseminated both by Coast, whose marketing AA Defendants controlled, and by AA Defendants' own

personnel working from California. Thus, Plaintiffs argue, Non-California Plaintiffs' UCL, FAL, and CLRA claims fall within those statutes' jurisdictional scope. (Plaintiffs' Opp. 13:5–15:16.)

Other courts within the Ninth Circuit have found deceptive marketing emanating from California to provide a sufficient geographic nexus to deceptive advertisements viewed in other states. *See, e.g., Wang v. OCZ Tech. Grp., Inc.*, 276 F.R.D. 618, 630 (N.D. Cal. 2011) ("[T]he misleading marketing and advertising materials at issue were 'conceived, reviewed, approved or otherwise controlled from [defendant's] headquarters in California.' "). However, the FAC in this case does not explicitly claim that any Defendant's marketing emanated from, originated from, or was controlled from California—including from Coast's headquarters in San Diego. (*See* FAC ¶¶ 37, 46.)

Indeed, the only geographic origin the FAC pleads for AA Defendants is their corporate headquarters in Fort Worth, Texas. (FAC ¶¶ 38–39.) Accordingly, Plaintiffs' opposition to AA Defendants' Motion attempts to recast their allegations in a manner unsupported by their FAC. *See Sarcuni v. bZx DAO*, 664 F. Supp. 3d 1100, 1124 (S.D. Cal. 2023) ("At the motion to dismiss stage, the Court is bound by the allegations in the FAC."); *In re Am. Cont'l Corp./Lincoln Sav. & Loan Sec. Litig.*, 102 F.3d 1524, 1537 (9th Cir. 1996) (courts generally are confined to the pleadings when reviewing a Rule 12(b)(6) motion to dismiss).

Thus, the Court **GRANTS** AA Defendants' Motion (AA MTD) and **DISMISSES WITHOUT PREJUDICE** Non-California Plaintiffs' UCL (Count 5), FAL (Count 6), and CLRA (Count 7) claims against AA Defendants. More specifically, the Court **DISMISSES** California statutory claims brought by the following Non-California Plaintiffs (who neither resided in California nor participated in the AACA program on a California campus): Plaintiff Christopher Chodkowski (FAC ¶ 18), Plaintiff Ludgy Germain (*id.* ¶ 21), Plaintiff Disney-Sean Grannell (*id.* ¶ 22), Plaintiff Jamaal Johnson (*id.* ¶ 24), Plaintiff Krystall Jones (*id.* ¶ 25), Plaintiff Honnah Lusby (*id.* ¶ 29), Plaintiff Ketsia Mianda (*id.* ¶ 31), and Plaintiff Thiago Ortega (*id.* ¶ 32).

**2. Texas Deceptive Trade Practices–Consumer Protection Act (Count 8)**

Plaintiffs bring a Texas Deceptive Trade Practices–Consumer Protection Act ("TDTPA"), Tex. Bus. & Com. Code Ann. § 17.41 *et seq.*, claim against all Defendants. (FAC ¶¶ 1002–28.) The TDTPA allows consumers to sue when any "false, misleading, or deceptive act or practice" mentioned in the statute is relied upon by the consumer and is a producing cause of the consumer's damages. Tex. Bus. & Com. Code Ann. § 17.50(a)(1); *Doe v. Boys Clubs of Greater Dall., Inc.*, 907 S.W.2d 472, 478 (Tex. 1995). The statute is directed at *Texas* consumers. *See* Tex. Bus. & Com. Code Ann. § 17.45(6) (defining statutory terms "trade" and "commerce" in terms of activity "directly or indirectly affecting the people of this state"); *Deburro v. Apple, Inc.*, No. A-13-CA-784-SS, 2013 WL 5917665, at *5 n.5 (W.D. Tex. Oct. 31, 2013); *Bass v. Hendrix*, 931 F. Supp. 523, 536 (S.D. Tex. 1996) (holding the TDTPA does not apply to activities that "took place in New York or Connecticut and were not directed toward a Texas resident"); *Birdsong v. Toyota Motor Credit Corp.*, No. 2000-CI-06279, 2002 WL 32830975, at *4 (Tex. Dist. Ct. May 15, 2002) ("The [T]DTPA does not extraterritorially apply to acts occurring outside of Texas.").

As a threshold matter, the Parties do not dispute that Plaintiffs residing in Texas or Plaintiffs participating in the AACA program on a Texas campus can bring causes of action under the TDTPA for harm stemming from AA Defendants' conduct that Plaintiffs experienced in Texas.

AA Defendants move to dismiss non-Texas Plaintiffs' TDTPA claim on the basis that TDTPA claims cannot be based upon extraterritorial conduct or injuries occurring outside of Texas. (AA MTD 15:16–16:6 (The TDTPA "may only reach beyond Texas when the plaintiff is a Texas consumer or the challenged conduct affects the people of Texas.").)

In their opposition to AA Defendants' Motion, Plaintiffs argue: "[AA Defendants'] employees based in Texas made false and misleading representations to all Plaintiffs

[including Plaintiffs residing out-of-state] to induce them to attend the AACA and made adverse decisions about Plaintiffs' participation in the program." (Plaintiffs' Opp. 15:24–26.) However, this argument is not supported by the FAC itself—which identifies AA Defendants' representative Maria Didonna as involved in mentorship communications and complaint-handling at the Dallas and San Marcos campuses (FAC ¶¶ 203, 373–74), and alleges AA Defendants selected the Texas flight schools and marketed the program *into* Texas (*id.* ¶¶ 42, 1007). Beyond pleading that both AA Defendants are headquartered in Fort Worth, Texas (*id.* ¶¶ 38–39), the FAC does not allege that AA Defendants or any of their employees marketed the AACA program from Texas or that they made any adverse decisions while in Texas. *See Sarcuni*, 664 F. Supp. 3d at 1124; *In re Am. Cont'l Corp./Lincoln Sav. & Loan Sec. Litig.*, 102 F.3d at 1537.

Thus, based on the standard set forth above, the Court finds Plaintiffs who are alleged neither to have had Texas residence nor to have participated in the AACA program on a Texas campus have insufficient ties to Texas to bring TDTPA claims against AA Defendants. These Plaintiffs are Plaintiff Andrew Fogel (FAC ¶ 20), Plaintiff Juan Hernandez (*id.* ¶ 23), Plaintiff Adam Khan (*id.* ¶ 26), Plaintiff Faith Little (*id.* ¶ 28), Plaintiff Ivana Page (*id.* ¶ 33), Plaintiff Andrew Pearson (*id.* ¶ 34), and Plaintiff Mathias Thelus (*id.* ¶ 36). The remaining Plaintiffs, each of whom either allege Texas residence or participated in the AACA program on a Texas campus ("Texas Plaintiffs"), are Plaintiff Kendall Anderson (FAC ¶ 17), Plaintiff Christopher Chodkowski (*id.* ¶ 18), Plaintiff De'Andre Clark (*id.* ¶ 19), Plaintiff Ludgy Germain (*id.* ¶ 21), Plaintiff Disney-Sean Grannell (*id.* ¶ 22), Plaintiff Jamaal Johnson (*id.* ¶ 24), Plaintiff Krystall Jones (*id.* ¶ 25), Plaintiff Ashley Kumar (*id.* ¶ 27), Plaintiff Honnah Lusby (*id.* ¶ 29), Plaintiff Samira McGowan (*id.* ¶ 30), Plaintiff Ketsia Mianda (*id.* ¶ 31), Plaintiff Thiago Ortega (*id.* ¶ 32), and Plaintiff Triston Sanderson (*id.* ¶ 35).

Accordingly, the Court **GRANTS** AA Defendants' Motion (AA MTD) and **DISMISSES WITHOUT PREJUDICE** Plaintiffs Fogel, Hernandez, Khan, Little, Page, Pearson, and Thelus's TDTPA claims (Count 8) against AA Defendants.

### D. Breach of Contract (Count 14)

Essential elements of a breach of contract cause of action include: "(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff." *Reichert v. Gen. Ins. Co. of Am.*, 68 Cal. 2d 822, 830 (1968).

Plaintiffs bring a cause of action for breach of contract against AA Defendants. (FAC ¶¶ 1078–86.) Plaintiffs allege their contractual relationship with AA Defendants consisted of "emails and other written communications, oral statements, mutual understandings, and courses of action and dealings." (*Id.* ¶ 1079.) However, although Plaintiffs identify the terms they say each contract incorporated (*id.* ¶ 1082), they do not specify which "written communications, oral statements, [or] mutual understandings" (*id.* ¶ 1079) made those terms part of an agreement with AA Defendants, or how AA Defendants manifested assent to them. Indeed, Plaintiffs do not describe how AA Defendants promised to fulfill the above conditions in their communications beyond generic website statements that the AACA program is typically 12 months, admission-interview statements that the AACA mentorship program was a "significant advantage," a blog post by AA Defendants' Cadet Development Specialist stating that "[a]bout a month prior to starting flight training, each cadet is paired with a mentor," and statements by Coast. (*Id.* ¶¶ 100–06, 150, 152–63, 170–72, 187–88, 208–11.) As AA Defendants argue in their Motion, Plaintiffs' above allegations are too vague to establish the "source, nature, and terms" of an existing contract—including mutual assent in the formation of that contract. (AA MTD 24:24–25:11.) *See Faibvre v. Kaiser Found. Hosps.*, No. 3:25-CV-00617-BTM-DTF, 2026 WL 25844, at *2 (S.D. Cal. Jan. 5, 2026) (citing *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011)) ("A breach of contract claim under California law must allege, among other requirements, the existence of the contract.").

Plaintiffs also allege American Airlines, Inc. breached "Conditional Offer[s] of Program Admission"—which are written agreements each Plaintiff signed with American Airlines, Inc. (FAC ¶ 1079 (citing Ex. C, ECF No. 62-3); *see also id.* ¶¶ 405, 430, 449,

478, 504, 523, 548, 579, 603, 634, 666, 691, 711, 733, 761, 785, 812, 842, 873, 899.) Since the Conditional Offer of Program Admission ("Conditional Offer") is an agreement signed by Plaintiffs and American Airlines, Inc., the Court finds it is a valid contract. *See Wells v. Hair Sols. By M E, Inc.*, No. LACV1200996JAKPLAX, 2012 WL 12882426, at *4 (C.D. Cal. Dec. 28, 2012) (citing *Meyer v. Benko*, 55 Cal. App. 3d 937, 943 (1976)) ("An instrument signed by both parties is generally an indication of mutual assent to the terms of that instrument.").

Plaintiffs attach a sample Conditional Offer between Plaintiffs and American Airlines, Inc. to the FAC. (Ex. C.) The Conditional Offer provides that American Airlines, Inc.'s obligation is to "assist [signee] in obtaining admission at one of the flight schools participating in the Cadet Academy Program . . . as a Flight Student." (*Id.*)

Plaintiffs allege American Airlines, Inc. "breached its contract with each Plaintiff *inter alia* by failing to ensure Plaintiffs could train five or six days per week, failing to provide mentorship, failing to ensure Plaintiffs had training sufficient to complete the AACA in 12 months (or in 10 months for Plaintiffs who already had their [initial license])." (FAC ¶ 1083.)

American Airlines, Inc. moves to dismiss Plaintiffs' claim on the basis that the Conditional Offer did not impose any contractual obligations on American Airlines, Inc. to "guarantee admission to any flight school and [the Conditional Offer] gives AA the right to remove a cadet from the program at any time in its sole and absolute discretion." (AA MTD 24:6–9.) This aligns with the text of the Conditional Offer, which states that it "may be rescinded . . . should any of the following occur: (i) [signee is] not admitted to any Flight School, (ii) [signee is] suspended or expelled by a Flight School." (Ex. C.) The Conditional Offer also states that "acceptance of this Conditional Offer of Program Admission does not guarantee an opportunity of employment with American or any affiliate of American, now or at any time in the future." (*Id.*) Nor does the Conditional Offer make any mention of the number of training days, the length of the program, or mentorship.

For the reasons above, the Court **GRANTS** AA Defendants' Motion and **DISMISSES WITHOUT PREJUDICE** Plaintiffs' breach of contract claims (Count 14) against AA Defendants. (AA MTD.)

**E. Civil Rights Act of 1866, 42 U.S.C. § 1981 (Count 11)**

Section 1981 of the Civil Rights Act of 1866 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a); *Johnson v. Lucent Techs., Inc.*, 653 F.3d 1000, 1005 (9th Cir. 2011), *as amended* (Aug. 19, 2011).

To state a claim under Section 1981, a plaintiff must identify an impaired "contractual relation" by showing that intentional racial discrimination prevented the creation of a contractual relationship or impaired an existing contractual relationship. *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 609 (1987) (citing *Runyon v. McCrary*, 427 U.S. 160, 168, 174–75 (1976)). To make that showing, a plaintiff must allege: (1) he is a member of a protected class, (2) he attempted to contract for certain services, and (3) he was denied a right enumerated in Section 1981, *i.e.*, the right to make or enforce a contract. *See, e.g., Lindsey v. SLT L.A., LLC*, 447 F.3d 1138, 1145 (9th Cir. 2006); *Knight v. Wells Fargo Bank, N.A.*, 459 F. Supp. 3d 1288, 1291 (N.D. Cal. 2019). Regarding the third prong, "[a]ny claim brought under § 1981 . . . must initially identify an impaired 'contractual relationship,' under which the plaintiff has rights." *Diaz v. Tesla, Inc.*, 598 F. Supp. 3d 809, 828 (N.D. Cal. 2022) (citing *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006)).

Plaintiffs bring a cause of action under Section 1981 of the Civil Rights Act of 1866.[1] (FAC ¶¶ 1054–61.) AA Defendants move to dismiss Plaintiffs' Section 1981 claim on the basis that Plaintiffs fail to identify a contract in which AA Defendants have not performed

[1] Coast does not challenge the sufficiency of Plaintiffs' Section 1981 allegations; it moves to dismiss that claim only on field preemption grounds (ECF No. 68), which the Court addresses in a separate order.

their obligations, arguing: "It is clear from the FAC . . . that AA Defendants performed under the Conditional Offers by assisting Plaintiffs in obtaining admission with Coast." (AA MTD 17:15–18:2.)

Plaintiffs' Section 1981 claim incorporates the contractual relationships alleged in their breach of contract counts (FAC ¶ 1057 (incorporating *id.* ¶¶ 1070–86)) and alleges AA Defendants impaired Plaintiffs' "enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship[]—including by dismissing them from the program or forcing them to resign—based on their race" (*id.* ¶ 1058). Since Plaintiffs have not adequately pled AA Defendants breached their contract, *supra* § III.D, Plaintiffs also have failed to plead that their contractual rights (or enforcement thereof) were compromised. Plaintiffs also have not pled that AA Defendants' actions prevented them from entering into any contract. Thus, the Court finds Plaintiffs have not pled an "impaired contractual relationship" to provide the basis for their Section 1981 claim. *See Knight*, 459 F. Supp. 3d at 1291 (holding a plaintiff can demonstrate an "impaired contractual relationship" under Section 1981 where the plaintiff was denied the right to make or enforce a contract).

For the reasons above, the Court **GRANTS** AA Defendants' Motion and **DISMISSES WITHOUT PREJUDICE** Plaintiffs' Section 1981 claims (Count 11) against AA Defendants.

### F. Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq.* (Count 10)

The ECOA makes it "unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction . . . on the basis of race, color, religion, national origin, sex or marital status, or age." 15 U.S.C. § 1691(a)(1).

Plaintiffs claim AA Defendants violated the ECOA, 15 U.S.C. § 1691 *et seq.*, by "reverse redlining" via targeting advertisements for the AACA program toward non-white people, purportedly resulting in disproportionately high rates of non-white people being terminated or forced to resign from the AACA and left carrying high-interest debt they cannot repay. (FAC ¶ 269.) AA Defendants move to dismiss Plaintiffs' claim by arguing:

(1) Plaintiffs fail to plausibly allege AA Defendants are "creditors" under the ECOA, and (2) Plaintiffs fail to plausibly allege AA Defendants targeted non-white people or offered loans on more favorable terms to white people. (AA MTD 18:5–21:8.)

**1. "Creditor" Definition in the ECOA, 15 U.S.C. § 1691a(e)**

Section 1691a(e) of the ECOA includes the following in its definition of "creditor": "[A]ny person who regularly arranges for the extension, renewal, or continuation of credit; or any assignee of an original creditor who participates in the decision to extend, renew, or continue credit." 15 U.S.C. § 1691a(e).

Whether a defendant falls within the definition of "creditor" under the ECOA also depends on the claim the plaintiff is attempting to bring against the defendant. For instance, in determining whether a defendant is subject to ECOA notification requirements, courts are more likely to find a defendant to be a "creditor" where the defendant "set[s] the terms of the loan or participate[s] in credit decisions." *Reyna v. Apple Inc.*, No. 26-CV-03137-RS, 2026 WL 2032304, at *3 (N.D. Cal. July 14, 2026) (holding Apple Inc. is not a "creditor" subject to ECOA notification requirements because the plaintiff "does not allege that Apple set the terms of the loan or participated in credit decisions"); *Salvagne v. Fairfield Ford, Inc.*, 794 F. Supp. 2d 826, 836 (S.D. Ohio 2010) (finding the plaintiff's failure to allege "Ford itself set the terms of the loan" militates against finding Ford is a "creditor"). On the other hand, "for purposes of [ECOA] prohibitions against discrimination," a person can be a creditor even "where the only role a person plays is accepting and referring applications for credit, or selecting creditors to whom applications will be made." *Henry v. Westchester Foreign Autos, Inc.*, 522 F. Supp. 2d 610, 615 (S.D.N.Y. 2007) (quoting 68 Fed. Reg. 13,144, 13,155 (Mar. 18, 2003)).

Here, Plaintiffs allege AA Defendants operate as "creditor[s]" as defined by Section 1691a(e) because AA Defendants "specifically chose, approved of, and partnered with the lender options for the AACA." (FAC ¶ 1046.) More specifically, Plaintiffs allege that AA Defendants "[o]n their websites and in emails to and conversations with Plaintiffs," had "specifically identified, offered, and recommended their partnered lenders." (*Id.* ¶ 67.) AA

Defendants move to dismiss Plaintiffs' claim because Plaintiffs did not allege AA Defendants themselves "regularly participated in credit decisions" (*i.e.*, "setting terms of credit"), or "regularly referred applicants to creditors or selected them"—and AA Defendants' alleged advertising of specific loan providers as "partnered lenders" falls short of the definition of "creditors" in the present action (AA MTD 19:13–20). *See* 15 U.S.C. § 1691a(e).

Given that Plaintiffs are bringing an ECOA anti-discrimination claim against AA Defendants, the Court broadly reads the ECOA definition of "creditor" to include AA Defendants based on their alleged referral of applicants to "partnered lenders" to whom applications were to be made. *See* 68 Fed. Reg. 13,144, 13,155 (Mar. 18, 2003) ("Creditors" include those who select other "creditors to whom applications will be made"). All Plaintiffs took out loans from the lenders AA Defendants designated as "partnered lenders." (FAC ¶¶ 66, 70–71.) *Cf. Henry*, 522 F. Supp. 2d at 614–15 (finding the defendant's regular referral of applicants to creditors would fall within the definition of "creditor" for ECOA anti-discrimination claims). Thus, construing the ECOA definition of "creditor" in favor of Plaintiffs as the nonmoving parties, the Court finds AA Defendants fall within that definition.

**2. AA Defendants' Alleged Discrimination**

The ECOA extends only to "credit transaction[s]." 15 U.S.C. § 1691(a)(1). Thus, the Court first evaluates whether AA Defendants' allegedly discriminatory conduct relates to a "credit transaction." Under the ECOA's implementing regulation, "[c]redit transaction means *every* aspect of an applicant's dealings with a creditor regarding an *application for credit* or an existing extension of credit . . . including, but not limited to, information requirements; investigation procedures; standards of creditworthiness; terms of credit; furnishing of credit information; revocation, alteration, or termination of credit; and collection procedures." 12 C.F.R. § 1002.2(m) (emphasis added).

Moreover, though historically the Ninth Circuit held that evidence of disparate impact on racial minorities related to credit transactions is sufficient for alleging

discrimination under the ECOA, the Consumer Financial Protection Bureau recently finalized changes on April 22, 2026, to add a new sentence to 12 C.F.R. pt. 1002 (the federal regulation implementing the ECOA), explicitly stating that the "effects test" (*i.e.*, disparate impact) no longer applies to determining discrimination under the ECOA. *See* 91 Fed. Reg. 21,620 (Apr. 22, 2026); *compare* 12 C.F.R. § 1002.6(a) ("The Act does not provide that the 'effects test' applies for determining whether there is discrimination in violation of the Act"), *with Miller v. Am. Express Co.*, 688 F.2d 1235, 1240 (9th Cir. 1982) (finding, in reversing summary judgment for defendant on ECOA claim, that legislative history of ECOA "allows but does not limit proof of credit discrimination to the two traditional Title VII tests for employment discrimination," *i.e.*, disparate treatment and disparate impact). Instead, discriminatory practices must be "applied with the intention of advantaging or disadvantaging individuals based on protected characteristics." 12 C.F.R. § 1002.6(a)(2). Evidence of intentional discrimination tends to include direct targeting of non-white people, or offering more favorable loan packages to white people compared to non-white people. *See Davenport v. Litton Loan Servicing, LP*, 725 F. Supp. 2d 862, 876 (N.D. Cal. 2010).

Here, Plaintiffs allege AA Defendants' targeted advertising of the AACA program toward racial minorities constitutes discrimination under the ECOA—given that AACA participants take out loans from AA Defendants' lending partners to participate in the AACA. That advertising allegedly included marketing the AACA with advertisements featuring people of color, touting its efforts to diversify the pilot profession, and even creating a YouTube playlist titled "Empowering Black Talent in Aviation" with several videos featuring the AACA program. (FAC ¶¶ 66–69, 231–35, 240–54, 264–69, 1038–53.) However, AA Defendants argue white and non-white prospective AACA program enrollees did not receive different loan terms—and thus, Plaintiffs fail to allege discrimination as it relates to the loans taken out as part of the AACA program. (AA MTD 20:19–21:8.)

As an initial matter, the Court finds advertisements of the AACA program explicitly targeting racial minorities are separate from AA Defendants' particular communications with Plaintiffs connected to their loans. Plaintiffs do not allege the AACA required every participant to finance the program with a loan. They allege only that none of them had sufficient funds to pay for the program and that each therefore took out a loan. (FAC ¶¶ 264–66.) Thus, the Court finds only the specific communications relating to Plaintiffs' *loans* can constitute credit transactions under the ECOA—not general advertising of the AACA program.

Next, the Court finds Plaintiffs do not adequately allege facts evincing that AA Defendants intentionally targeted non-white people in their communications regarding loan options to finance the AACA program—despite Plaintiffs' conclusory allegations otherwise. (*Id.* ¶¶ 144–49, 1048–50.) While Plaintiffs allege marketing for the AACA program is aimed toward non-white people (*e.g.*, advertisements featuring people of color, public statements touting efforts to diversify the pilot profession, and even a YouTube playlist titled "Empowering Black Talent in Aviation" with several videos featuring the AACA program) (*id.* ¶¶ 241–54), Plaintiffs do not allege that the specific webpages and communications regarding loan options associated with the AACA program referenced race (*e.g.*, AA Defendants' webpage regarding the cost of the AACA program offers loan options without mention of race) (*id.* ¶¶ 144–49).

Plaintiffs also allege that none of them could afford the program without financing, that they all borrowed from AA Defendants' partner lenders, and that non-white AACA program enrollees tend to have lower completion rates than white enrollees. Thus, according to Plaintiffs, non-white participants more often end up carrying AACA debt without the pilot income needed to repay. (*Id.* ¶¶ 264–67, 331, 379, 385–91.) However, even if Plaintiffs' allegations were sufficient to plead disparate impact of the AACA program loans on non-white participants, Plaintiffs do not allege that AA Defendants' communications regarding the AACA program loans (*e.g.*, AA Defendants' webpage) explicitly mentioned race or that they were otherwise intentionally based on race (*see id.* ¶

149). *See Davenport*, 725 F. Supp. 2d at 876 (finding the plaintiff failed to allege "direct targeting or evidence of loans made to others [not belonging to the protected class] on more favorable terms," and thus failed to plead intentional discrimination under the ECOA); 12 C.F.R. § 1002.6(a)(2) (disparate impact alone is insufficient to demonstrate discrimination under the ECOA).

* * *

For the reasons above, the Court **GRANTS** AA Defendants' Motion and **DISMISSES WITHOUT PREJUDICE** Plaintiffs' ECOA claims (Count 10) against AA Defendants. (AA MTD.)

### G. Breach of Quasi-Contract (Count 15)

"A quasi-contract is a legal fiction in which the court implies a contract when the defendant obtained a benefit from the plaintiff by fraud, duress, coercion, or similar conduct." *Ketayi v. Health Enrollment Grp.*, 516 F. Supp. 3d 1092, 1139 (S.D. Cal. 2021). The elements of a cause of action for quasi-contract are: (1) the defendant's receipt of a benefit; and (2) the unjust retention of that benefit at the plaintiff's expense. *See MH Pillars Ltd. v. Realini*, 277 F. Supp. 3d 1077, 1094 (N.D. Cal. 2017).

Plaintiffs bring a breach of quasi-contract cause of action as an alternative to their breach of contract cause of action. (FAC ¶ 1088.) Plaintiffs incorporate their earlier allegations, including those underlying their breach of contract claims. (*Id.* ¶ 1087.) Plaintiffs also specifically claim AA Defendants "enticed Plaintiffs to pay for and enroll in the AACA program through their false and misleading statements." (*Id.* ¶ 1090.) AA Defendants move to dismiss Plaintiffs' quasi-contract claims on the bases that (1) Plaintiffs' breach of contract claims preclude their claims for breach of quasi-contract, and (2) Plaintiffs fail to allege AA Defendants unjustly retained benefits at Plaintiffs' expense. (AA MTD 21:9–23:6.)

First, the tuition money for the AACA program is pled as a direct benefit to Coast—rather than AA Defendants. (FAC ¶¶ 1079, 1092.) Thus, the Court agrees that Plaintiffs

have not sufficiently alleged AA Defendants retained a tuition benefit at Plaintiffs' expense.

Second, Plaintiffs allege—via the Conditional Offer—that American Airlines, Inc. received the right to use Plaintiffs' name, image, and likeness as brand representatives. (*Id.* ¶¶ 54, 1079–80, Ex. C at 1, 3 ("Use of Name, Image and Likeness Acknowledgement" signed by Plaintiffs as an addendum to the Conditional Offer).) However, "[a]n action based on an implied-in-fact or quasi-contract cannot lie where there exists between the parties a valid express contract covering the same subject matter." *Vizcarra v. Michaels Stores, Inc.*, 710 F. Supp. 3d 718, 732 (N.D. Cal. 2024) (citing *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 231 (2014)). As discussed *supra* § III.D, the Conditional Offer is a valid contract. Since the Use of Name, Image and Likeness Acknowledgement is also an agreement signed by Plaintiffs and American Airlines, Inc., the Court also finds it is a valid agreement. (*See* Ex. C at 3.) Therefore, Plaintiffs also cannot base their quasi-contract claim on benefits AA Defendants obtained through the Conditional Offer or the Use of Name, Image and Likeness Acknowledgement.

For the reasons above, the Court **GRANTS** AA Defendants' Motion and **DISMISSES WITHOUT PREJUDICE** Plaintiffs' breach of quasi-contract claims (Count 15) against AA Defendants. (AA MTD.)

## IV. CONCLUSION

For the reasons above, the Court **GRANTS IN PART** and **DENIES IN PART** AA Defendants' Motion. (AA MTD.) More specifically, the Court **DENIES** AA Defendants' Motion regarding dismissal under Rule 12(b)(2). The Court **GRANTS IN PART** AA Defendants' Motion regarding dismissal under Rule 12(b)(6) and **DISMISSES WITHOUT PREJUDICE** the following claims against AA Defendants:

1. Plaintiffs Chodkowski, Germain, Grannell, Johnson, Jones, Lusby, Mianda, and Ortega's UCL (Count 5), FAL (Count 6), and CLRA (Count 7) claims;
2. Plaintiffs Fogel, Hernandez, Khan, Little, Page, Pearson, and Thelus's TDTPA claims (Count 8);

3. Plaintiffs' ECOA claims (Count 10);
4. Plaintiffs' Section 1981 claims (Count 11);
5. Plaintiffs' breach of contract claims (Count 14); and
6. Plaintiffs' breach of quasi-contract claims (Count 15).

However, the Court **DENIES** AA Defendants' Motion under Rule 12(b)(6) and declines to dismiss the following claims against AA Defendants:

1. Plaintiffs' fraud-based claims (Counts 1–4);
2. Plaintiffs Anderson, Clark, Fogel, Hernandez, Khan, Kumar, Little, McGowan, Page, Pearson, Sanderson, Thelus's UCL (Count 5), FAL (Count 6), and CLRA (Count 7) claims;
3. Plaintiffs Anderson, Chodkowski, Clark, Germain, Grannell, Johnson, Jones, Kumar, Lusby, McGowan, Mianda, Ortega, and Sanderson's TDTPA claims (Count 8); and
4. Plaintiffs' Unruh claims (Count 9).

For dismissed claims, Plaintiffs may file an Amended Complaint by **November 5, 2026**.

**IT IS SO ORDERED.**

**DATED: October 15, 2026**

Cynthia Bashant

**Hon. Cynthia Bashant, Chief Judge**
**United States District Court**